IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**WINSTON L. SPENCE JR.,**

        Plaintiff,

v.    CIVIL ACTION NO. 3:20-CV-163 (GROH)

**CITY OF MARTINSBURG, WV;
MARTINSBURG POLICE DEPARTMENT;
CHIEF MAURY RICHARDS; PATROLMAN
N. COOK; and JOHN DOE(S) 1-3**

        Defendants.

### REPORT AND RECOMMENDATION

#### I.    INTRODUCTION

Pending before the Court is Plaintiff Winston L. Spence Jr.'s, ("Plaintiff") pro se Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis.[1] Because Plaintiff seeks to proceed *in forma pauperis*, the undersigned must conduct a preliminary review to determine whether Plaintiff's pro se Complaint [ECF No. 1] sets forth any viable claims. See 28 U.S.C. § 1915(e)(2)(B). Because the undersigned concludes that Plaintiff has failed to state a claim upon which relief can be granted, the undersigned recommends that Plaintiff's complaint be dismissed, without prejudice, and Plaintiff's motion to proceed *in forma pauperis* be denied as moot.

#### II.    THE COMPLAINT

On September 4, 2020, Plaintiff filed a six-count complaint alleging that

---

[1] This motion was referred to the undersigned on October 29, 2020. ECF No. 5.

1

Defendants City of Martinsburg, WV ("City of Martinsburg"); Martinsburg Police Department ("MPD"); Chief Maury Richards ("Chief Richards"); Patrolman N. Cook ("Patrolman Cook"); and John Doe(s) 1-3 (collectively, "Defendants"), violated Plaintiff's civil rights under 42 U.S.C. § 1983 and his rights under the Fourth and Fourteenth Amendments of the United States Constitution ("Constitution"). See ECF No. 1 at 2-3.

In support of his complaint, Plaintiff provides the following facts. Plaintiff alleges that on or about September 5, 2018, while sitting on a bench outside of a restaurant in Martinsburg, West Virginia, at approximately two-thirty in the morning, Patrolman Cook drove by and parked his police vehicle near the restaurant. Id. at 5. Patrolman Cook exited his vehicle, approached Plaintiff, stated that the restaurant was closed, and instructed Plaintiff to leave. Id. As Plaintiff began to leave, Patrolman Cook asked him if he had an I.D. on his person. Id. at 6. Plaintiff stated that he did, but he did not want to identify himself. Id. Plaintiff claims Patrolman Cook told him to sit down, and Patrolman Cook radioed for additional officers to respond. Id. Three officers, John Doe(s) 1-3, arrived at the scene in separate police vehicles. Id.

According to Plaintiff, Patrolman Cook told him that he would be arrested for trespassing and loitering if he would not provide his name. Id. At some point during the encounter, Plaintiff claims that Patrolman Cook handcuffed him without stating a reason. Subsequently, Plaintiff contends that Patrolman Cook searched Plaintiff's person and removed his wallet from his pocket. Id. Upon locating Plaintiff's I.D.[2], Patrolman Cook inquired as to Plaintiff's identity with dispatch and learned that there was an outstanding warrant for Plaintiff's arrest. Id.

---

[2] It is unclear from the complaint where Plaintiff's I.D. was located, but it appears to the undersigned that the I.D. was taken from Plaintiff's wallet.

2

Plaintiff was taken to the Martinsburg City Police Station and informed that he was being charged with obstructing an officer, in violation of West Virginia Code § 61-5-17(a). Id. at 6-7. Plaintiff contends that the charge was read aloud to him, but he was never informed of his rights under Miranda[3]. Id. at 7. Plaintiff was later transported and admitted to the Eastern Regional Jail ("ERJ").

Subsequently, Plaintiff was arraigned before a Berkeley County, West Virginia, Magistrate for obstructing an officer and was released on bond. Id. Then, Plaintiff was arraigned before a City of Martinsburg Magistrate for the outstanding warrant of speeding and failure to appear, which charges were subsequently dismissed. Id.

Almost a year later, on July 9, 2019, Plaintiff claims that the Berkeley County Prosecutor's Office moved to have Plaintiff's bond revoked. Id. Plaintiff was arrested three days later. Id. at 8. On July 30, 2019, the prosecutor moved to dismiss the charge against Plaintiff for obstructing an officer. Id. The court granted the motion, and Plaintiff was released from custody. Id.

In Count One of his complaint, Plaintiff alleges that the City of Martinsburg, MPD, Chief Richards, Patrolman Cook, and John Doe(s) 1-3, deprived Plaintiff of his civil rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments for unreasonable search and seizure. Id. at 9. Next, in Count Two, Plaintiff claims Patrolman Cook committed an unlawful assault, in violation of West Virginia Code § 61-2-9, when Patrolman Cook threatened to and did control Plaintiff's arms and hands to place him in handcuffs. Id. In Count Three, Plaintiff alleges that Patrolman Cook committed an unlawful battery through offensively touching Plaintiff's body to pat down

---

[3] Plaintiff does not state that he was questioned by any officer after he was handcuffed and transported to the police station.

3

Plaintiff "without the requisite level of suspicion." Id. at 9-10. Additionally, Plaintiff brings Count Four against all Defendants for false imprisonment. Plaintiff argues that Patrolman Cook and John Doe(s) 1-3 unlawfully detained Plaintiff because Patrolman Cook did not reasonably believe Plaintiff committed an offense. Id. at 10. In Count Five, Plaintiff alleges that the City of Martinsburg, MPD, and Chief Richards violated his rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments for unreasonable search and seizure. Id. Plaintiff claims that the MPD maintained policies or customs that demonstrated indifference towards individuals' constitutional rights. Id. at 11. Further, the MPD failed to properly hire, train, and supervise officers. Id. Lastly, Count Six states that the City of Martinsburg is liable to Plaintiff under the theory of respondent superior. Id. at 11-12.

Plaintiff seeks monetary damages in the amount of $1,000,000.00 in compensatory damages and $5,000,000.00 in punitive damages. Id. at 12. Additionally, Plaintiff requests a permanent injunction that requires City of Martinsburg to adopt new policies regarding the hiring and supervision of its officers. Id. Further, Plaintiff requests the Court to enter an order affirming Patrolman Cook and John Doe(s)' acts to be unconstitutional. Id.

### III. LEGAL STANDARD

When filing a lawsuit in federal court, the plaintiff is required to pay certain filing fees. The court has the authority to allow a case to proceed without the prepayment of fees "by a person who affirms by affidavit that he or she is unable to pay costs . . . ." L.R. Gen. P. 3.01. The plaintiff files this affidavit along with her request or motion for leave to proceed *in forma pauperis*. Id. The Supreme Court of the United States has explained

4

that the purpose of the "federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989).

When a plaintiff seeks to proceed *in forma pauperis*, the court conducts a preliminary review of the lawsuit before allowing the case to proceed. See 28 U.S.C. § 1915(e). This includes cases filed by non-prisoners. See Michau v. Charleston Cnty., S.C., 434 F.3d 725, 727 (4th Cir. 2006) (holding that the district court did not abuse its discretion when it dismissed the non-prisoner complaints under 28 U.S.C. § 1915(e)(2)(B)). The court must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief can be granted, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. Therefore, in order for a complaint to survive dismissal for

5

failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.; see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A case is often dismissed *sua sponte* (i.e., on the court's own decision) before the defendant is notified of the case "so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke, 490 U.S. at 324. When reviewing pro se complaints, the Court must construe them liberally. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV.   DISCUSSION

### A.   Jurisdiction

Before evaluating whether Plaintiff's complaint sets for a claim for relief, the undersigned must first determine if this Court has subject-matter jurisdiction. If a "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004) (stating that "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court"). Subject-matter jurisdiction in federal

courts must be based on diversity jurisdiction or federal-question jurisdiction. 28 U.S.C. §§ 1331, 1332. Sharp v. AT & T Commc'ns, 660 F. Supp. 650, 650 (N.D. W. Va. 1987).

Diversity jurisdiction has two requirements: First, there must be complete diversity of citizenship, meaning that each plaintiff is a citizen of a different state than each defendant. 28 U.S.C. § 1332. Second, the amount in controversy must exceed $75,000. Id. Here, although Plaintiff requests monetary relief in an amount over $75,000, the parties are not diverse. Plaintiff and all parties appear to be citizens of West Virginia. Therefore, diversity jurisdiction does not exist.

Federal-question jurisdiction requires that the action "aris[e] under the Constitution, laws or treatises of the United States." 28 U.S.C. § 1331. In the complaint, Plaintiff contends that Defendants violated his rights under 42 U.S.C. § 1983, a federal law, and the Fourth and Fourteenth Amendments of the Constitution. ECF No. 1 at 2. Therefore, this Court has federal-question jurisdiction to consider Plaintiff's complaint.

Also, Plaintiff claims that this Court has authority to consider counts in the complaint that are brought pursuant to West Virginia state law under supplemental jurisdiction. 28 U.S.C. § 1367. A District Court with jurisdiction over a claim may exercise supplemental jurisdiction over additional claims which the Court would not independently have subject matter jurisdiction if the additional claims arise from the same case or controversy. Id. Importantly, the additional claims must arise out of a common nucleus of operative fact, where the claims should all be tried together. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Here, all claims in the complaint arise from Plaintiff's encounter with Patrolman Cook and Plaintiff's arrest during the same encounter. Because

all claims arise from the same case and controversy, this Court has jurisdiction to hear any additional claims in the complaint that are brought pursuant to 28 U.S.C. § 1367.

### B. Failure to State a Claim Against MPD

Plaintiff brought claims pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage.....subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights...secured by the Constitution and laws, shall be liable to the party injured in any action at law...or suit in equity.

42 U.S.C. § 1983. The initial inquiry in a § 1983 case is as follows: (1) was the conduct complained of committed by **a person** acting under the color of state law and (2) did that conduct deprive the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579 (11th Cir. 1995); Harvey v. Harvey, 949 F. 2d 1127, 1130 (11th Cir. 1992). Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendell-Baker v. Kohn, 547 U.S. 830, 838 (1982).

Here, Plaintiff has brought claims against the MPD. However, the MPD is not a proper defendant because the entity is not a **person** subject to suit under 42 U.S.C. § 1983. See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (unpublished). Therefore, Plaintiff fails to state a claim against the MPD, named in Counts One, Four, and Five.

### C. Failure to State a Claim Against City of Martinsburg

A "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. City of New York City Dept. of Social Services, 436

U.S. 658, 694 (1978).  However, a municipality may be liable under § 1983 upon showing that a governmental entity deprived a plaintiff of his rights when the cause of the grievance "may be fairly said to represent official policy." Id. Additionally, a municipality may be sued for deprivation of constitutional rights pursuant to governmental custom, regardless of whether the custom has received official approval. Id. at 691. Therefore, a municipality is not liable for the acts of its employees under *respondeat superior* theory in a § 1983 claim. See id. at 691-695.

Plaintiff claims that the City of Martinsburg is liable to Plaintiff based on the actions of its officers. First, the City of Martinsburg, a municipality, cannot be liable for the actions of its officers under *respondeat superior*, as specifically raised in Count Six. Id. Further, Plaintiff fails to allege any facts in the complaint that demonstrate or allow the undersigned to infer the existence of an established custom or policy that could result in liability against the City of Martinsburg. Plaintiff merely makes broad, conclusory statements that such a policy or custom existed at the time of Plaintiff's encounter with Patrolman Cook without facts to support his contentions. ECF No. 1 at 10-11. None of Plaintiff's claims against the City of Martinsburg show that it is responsible for any alleged violations of Plaintiff's rights. Therefore, Plaintiff fails to state a claim upon which relief can be granted against the City of Martinsburg, as alleged in Counts One, Four, Five, and Six of the complaint.

      **D.**     **Failure to State a Claim Against Chief Richards**

In the complaint, Plaintiff names Chief Richards in his official and individual capacity. However, Plaintiff does not provide any facts that indicate Chief Richards was personally involved in the alleged violations of Plaintiff's constitutional rights.

"Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). As stated by the Fourth Circuit, because there is no *respondeat superior* liability under § 1983, supervisory liability lies only "where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997) (citing Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971) aff'd 451 F.2d 1011 (4th Cir. 1971); Harris v. City of Virginia Beach, 11 Fed. Appx. 212, 215 (4th Cir. 2001). Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1133 (4th Cir. 1982) (abrogated on other grounds by County of Riverside v. McLaughlin, 500 U.S. 44 (1991)).

"We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), Cert. denied, 513 U.S. 813 (1994) (citations omitted).

"To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, 13 F.3d at 799, (citing Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984)). "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses,' however, a plaintiff claiming deliberate indifference 'assumes a heavy burden of proof.'" Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." Id.

Plaintiff provides no facts to support his claim or allow the undersigned to infer the existence of such a custom that would result in supervisory liability. Plaintiff merely makes conclusory statements that such a policy or custom was developed and maintained prior to September 5, 2018. ECF No. 1 at 11. Because Plaintiff fails to allege any personal involvement on the part of Chief Richards and does not make any allegations which establish the elements for supervisory liability, Plaintiff fails to state a claim against Chief Richards, named in Counts One, Four, and Five.

### E. Failure to State a Claim Against Patrolman Cook and John Doe(s) 1-3[4]

Even though the Court has jurisdiction over Plaintiff's claims, Plaintiff fails to state a claim upon which relief can be granted against Patrolman Cook and John Does(s) 1-3[5].

---

[4] Generally, police officers possess qualified immunity from suit. See Pierson v. Ray, 386 U.S. 547 (1967).
[5] A plaintiff may name "John Doe" as a defendant when the identity of a defendant is unknown. Boyd v. Gullet, 64 F.R.D. 196 (D. Md. 1974). However, a District Court is not required "to wait indefinitely" for the plaintiff to provide the defendant's true identity to the Court. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980).

11

In Count One, Plaintiff contends that Patrolman Cook and John Doe(s) 1-3 violated his civil rights under 42 U.S.C. § 1983 and his rights under the Fourth and Fourteenth Amendment. Id. at 9. Based on Plaintiff's allegations in the complaint, Plaintiff fails to state a meritorious claim. Plaintiff was seen by Patrolman Cook outside of a closed business at two-thirty in the morning. Id. at 5. Solely based on the facts alleged by Plaintiff, it is unclear how Patrolman Cook violated Plaintiff's civil rights by stopping Plaintiff to investigate Plaintiff's actions. See Terry v. Ohio, 392 U.S. 1, 24-25 (1968) (recognizing that an officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to conduct a brief stop to investigate). The complaint even states that Patrolman Cook informed Plaintiff that he could arrest him for trespassing and loitering outside of the closed restaurant. ECF No. 1 at 6. Additionally, officers are permitted during Terry stops to inquire into a person's identification. See United States v. Hensley, 469 U.S. 221, 229 (1985). The ability to stop a person or check identification promotes a strong government interest of pursuing possible criminal activity. Hayes v. Florida, 470 U.S. 811, 816 (1985). Subsequently, Patrolman Cook did arrest Plaintiff and conducted a pat down on Plaintiff's body, a common policing practice under Terry. ECF No. 1 at 6.

Subsequently, Plaintiff was also arrested and detained upon discovery of an outstanding warrant, which properly resulted from the stop. Id. According to Plaintiff's complaint, the warrant was valid, and the charges for speeding and failure to appear were adjudicated in magistrate court. Id. at 7. Further, according to Plaintiff, the charge of obstructing an officer proceeded in the court system for nearly a year and was not dismissed soon after the arrest. Id. at 7-8. Because Patrolman Cook and John Doe(s) 1-3 had sufficient cause to conduct an investigatory stop, Plaintiff fails to raise a claim for a

violation of his rights under 42 U.S.C. § 1983. Therefore, the claim lacks merit, and Plaintiff fails to state a claim upon which relief can be granted against Patrolman Cook and John Doe(s) in Count One.

Next, Plaintiff claims Patrolman Cook committed an unlawful assault by threatening and attempting to control Plaintiff's hands when handcuffing Plaintiff. The facts provided by Plaintiff do not support a claim because Plaintiff was handcuffed after Patrolman Cook witnessed Plaintiff potentially committing the crimes of loitering and trespass. Id. at 6. When making an arrest or investigatory stop, law enforcement maintains "the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989) (citing Terry, 392 U.S. at 22-27). Further, Plaintiff was later charged with obstructing an officer as a result of the encounter. Id. at 7. The alleged fact that Patrolman Cook handcuffed Plaintiff without first informing him of the charge and charging Plaintiff with a crime other than loitering or trespassing does not result in a claim upon which relief can be granted. Therefore, Plaintiff fails to state a claim against Patrolman Cook in Count Two.

Third, Plaintiff alleges that Patrolman Cook committed an unlawful battery by offensively touching Plaintiff's body when patting Plaintiff down. It appears from the complaint that Plaintiff was allegedly seized when Patrolman Cook placed him in handcuffs. Under Terry, an officer may conduct a pat down of a suspect's clothing for officer safety. Terry, 392 U.S. at 29-30. Additionally, it is reasonable to search an individual's person incident to an arrest. United States v. Robinson, 414 U.S. 218, 234-237 (1973). Based on the complaint, Plaintiff was lawfully seized by the officers, and long-held Fourth Amendment jurisprudence allows officers to act in the manner that is alleged.

Therefore, Plaintiff provides no facts upon which relief can be granted against Patrolman Cook in Count Three.

Finally, in Count Four, Plaintiff asserts that Patrolman Cook and John Doe(s) 1-3 unlawfully detained Plaintiff. Plaintiff argues that Patrolman Cool and John Doe(s) 1-3 detained Plaintiff without reasonably believing Plaintiff has committed a criminal act. ECF No. 1 at 10. Regardless of the Defendants' subjective intent[6], the facts do not support Plaintiff's contentions. Again, according to Plaintiff's complaint, Plaintiff was seen by Patrolman Cook sitting on a bench that was directly outside of a closed restaurant in the early morning hours. Id. at 5. Patrolman Cook initiated an encounter with Plaintiff based on this activity. Id. As the encounter unfolded, Patrolman Cook decided to detain, arrest, and charge Plaintiff with obstructing an officer. Id. at 5-7. The undersigned notes that the charge even proceeded in the state court system for nearly a year. Id. at 7-8. The facts do not indicate that the officers at the scene acted maliciously as alleged. See Utah v. Strieff, 136 S.Ct. 2056, 2064 (2016). Therefore, Plaintiff fails to state a claim upon which relief can be granted against Patrolman Cook and John Doe(s) 1-3 in Count Four.

## V.  RECOMMENDATION

For the foregoing reasons, I find that Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, I **RECOMMEND** that Plaintiff's Complaint [ECF No. 1] be **DISMISSED WITH PREJUDICE** as to **Defendant Martinsburg Police Department**. Further, **I RECOMMEND** that Plaintiff's Complaint [ECF No. 1] be **DISMISSED WITHOUT PREJUDICE** as to **Defendants City of Martinsburg, Chief Maury Richards, Patrolman**

---

[6] The undersigned makes no findings as to the intent of any Defendants.

**N. Cook, and John Doe(s) 1-3**. Plaintiff's Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis be **DENIED AS MOOT**.

Plaintiff shall have fourteen (14) days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to mail a copy of this Report and Recommendation to the pro se Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 10th day of December, 2020.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE